UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANGELA LYLES,

                Plaintiff,

v.                                            Case No.  5:07-cv-101-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits and supplemental security income. (Docs. 1 & 11.) The Commissioner has answered (Doc. 15), and both parties have filed briefs outlining their respective positions. (Docs. 18 & 19.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On September 11, 2003, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of September 1, 2002. (R. 70-73, 225-27.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 50-53, 60-61, 64-65, 215-24.)   Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ") (R. 59.) The ALJ conducted Plaintiff's administrative hearing on December 16, 2005. (R. 36-49.)  The

ALJ issued a decision unfavorable to Plaintiff on April 28, 2006.  (R. 17-25.)  Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied.  (R. 4-6.)  Plaintiff then appealed to this Court.  (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).


relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing, Plaintiff was thirty four (34) years old. (R. 39.) She has a high school education and completed half a semester of community college. (Id.) Plaintiff has previous work experience as a veterinary assistant, telemarketer, snack bar attendant, clerk and housekeeper. (R. 43, 79.) Plaintiff contends that she has been unable to work since September 1, 2002 due to blindness in her left eye, hip dysplasia, and arthritis in hands and shoulders. (R. 78.) Plaintiff is insured for disability benefits through December 31, 2004 and, thus, Plaintiff must establish disability on or before that date.

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

On January 9, 2004, Plaintiff was seen by Edward L. Demmi, M.D. for a consultative evaluation. (R. 158-62.) Dr. Demmi reported Plaintiff's vision was 20/400 in the left eye and 20/20 in the right eye. Her shoulders were painful with range of motion testing and there was laxity of the right shoulder with abduction and distraction; however, motor strength was 5/5. Plaintiff had no swelling or deformity of the fingers, grip strength was 5/5 and fine manipulation of hands was normal. Dr. Demmi noted a popping sensation to the bilateral hips with forced external rotation of the hips, but motor strength of 5/5. Plaintiff's left achilles tendon was slightly tender on palpation. Plaintiff's gait was normal and she could walk without assistance. Plaintiff's motor, sensory and reflex findings were normal, straight and seated leg raises were normal and range of motion for spine was normal. Dr. Demmi's diagnostic impression was bilateral hip pain with history of hip dysplasia and hip laxity; left eye blindness; history of arthritis of the hands with no evidence of arthritis on clinical examination; bilateral shoulder pain with laxity of the right shoulder; and left ankle achilles pain.

On March 17, 2004, Plaintiff was seen by Henry Meer, M.D., an ophthalmologist. (R. 178-79.) On examination, Plaintiff's right eye was 20/25 and Plaintiff was diagnosed with myopia, a history of optic atrophy of the left eye and cataracts.

From January 2004 until November 2005, Plaintiff had a series of x-rays at Westcoast Diagnostic Imaging Center. (R. 197-201.) X-rays of the right hip, chest and thoracic spine were all normal.

On November 9, 2005, Plaintiff had a vocational evaluation with Ms. Carla Gleason. (R. 203-14.) Ms. Gleason noted significant pain related behaviors throughout the evaluation process and noted that Plaintiff frequently shifted positions in her seat

and frequently stood during testing and that she was only able to sit for approximately 10-15 minutes before it became necessary for her to stand to stretch or walk around the room. Plaintiff frequently rubbed her hands, lower arms and shoulders. Ms. Gleason found that the test scores were valid and should be an accurate measure of Plaintiff's level of intellectual functioning and academic ability because Plaintiff was genuinely interested in the evaluation process, understood test instructions and attempted to do her best work. The testing revealed that Plaintiff was functioning within the below average range of intellectual ability and she demonstrated deficits in basic mathematical skills. Based on these results, Ms. Gleason opined that Plaintiff would be capable of learning and understanding new information and materials presented to her within a workplace environment, but she would have difficulty learning and understanding new information and materials presented to her within an academic setting. On mobility evaluation, Plaintiff was able to balance on each leg, walk forward, backward and stoop but she was unable to walk heel/toe, walk on her toes or walk on her heels, squat, kneel, crawl, climb or crouch. Plaintiff was unable to grip objects with both hands. Ms. Gleason opined that based on Plaintiff's multiple on-going medical problems, significant physical limitations, observations and self-reported symptoms, "vocational rehabilitation is deemed not feasible at this time."

There are two physical residual function capacity ("RFC") assessments of record which were performed by non-examining state agency physicians. Nicholas Bancks,

M.D. performed an assessment on January 23, 2004 (R. 163-70) and N.L. Kopifinik,[22] performed an assessment on April 30, 2004. (180-87.) Based on his review of the medical records, Bancks opined that Plaintiff could frequently lift/carry up to 25 pounds, occasionally lift/carry up to 50 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without any limitation. Bancks further found that Plaintiff should never climb ladders, ropes or scaffolds, that she should balance occasionally and she should avoid concentrated exposure to hazards. He further found that she had a number of visual limitations – i.e., near acuity, far acuity, depth perception and field of vision.

Kopifinik opined that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without any limitation. (R. 181.) Kopifinik limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching and crawling. He further found that Plaintiff is limited in her ability to reach in all directions and is limited in near acuity, far acuity, depth perception, accommodation, color vision, and field of vision.

At the hearing, Plaintiff testified that she has been taking hydrocodone for approximately nine years. (R. 40.) Plaintiff testified that she has not been able to see out of her left eye since she was two years old and that she has a cataract but that surgery would not help. (Id.) She further testified that she has joint pain and an inverted hip and that she has problems walking but that she does not use an assistive

---

[22] Because the physician's name is difficult to read, this is the Court's informed best guess as to the correct spelling of his name.

device. (Id.)  Plaintiff explained that as a child she had extensive physical therapy and wore leg braces like Forrest Gump. (R. 41.)  Plaintiff explained that her hip comes out of joint every three days and can remain out of place for a week to two weeks at a time and that she has to lay down daily due to the hip pain.  (R. 42, 46-7.)  Plaintiff testified that she always has pain in her hands, arms, shoulders, hips and knees, but that it is worse in the mornings.  (R. 41.)  Plaintiff testified that she drives her son to school, about a mile from her home.  Plaintiff testified that she can lift ten pounds, stand, walk and sit for fifteen to twenty minutes. (R. 44.) Plaintiff explained that after fifteen to twenty minutes her hips all the way to her feet go numb. (R. 45.)  Plaintiff also reported left ankle pain and bilateral shoulder pain due to a motor vehicle accident in 1994. (R. 45-6.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff has blindness in the left eye and hip dysplasia.  (R. 22.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (Id.)

The ALJ then found that Plaintiff retained the RFC to perform light work. (R. 23.) The ALJ limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching and crawling and noted that Plaintiff is blind in her left eye.   After finding that Plaintiff could perform her past relevant work as a telemarketer and clerk, the ALJ concluded that Plaintiff was not disabled. (R. 24.)

### IV. **DISCUSSION**

As an initial matter, a comment about Plaintiff's brief is in order. While the Court attempts to review carefully all of the evidence of record in every Social Security case the Plaintiff has some level of responsibility for presenting his or her arguments to the Court in a cogent and organized manner so that the Court will be able to identify the legal arguments asserted in support of Plaintiff's request that the Court reverse the decision of the Commissioner. In this particular case Plaintiff has completely failed to do so. Rather, the Court has been left to divine the legal arguments asserted by Plaintiff from the disjointed and disorganized paragraphs cobbled together in the argument section of Plaintiff's brief.[23]

The most glaring example of this lack of attention and detail to the arguments in Plaintiff's brief is evident at the very beginning of the argument section of the brief where Plaintiff attempts to identity the error by the ALJ.  Plaintiff characterizes the error in the case as "Substantial Evidence Does Not Support The Administrative Law Judge's Finding That Lyles Is Able To Perform Substantial Gainful Activity."  Plaintiff's argument then goes on in the first sentence of her argument to explain that the ALJ's error was his "Step 7 decision, finding that the claimant has the residual functional capacity to return to work as a telemarketer and clerk."[24]  The Court is at a complete loss to understand Plaintiff's argument in view of the fact that the sequential evaluation utilized by the ALJ

---

[23] The first twelve pages of the Memorandum is boiler plate language and Plaintiff's Argument section is merely four pages long.

[24] Doc. 18 at 15.

10

only involves five steps and not seven steps.[25] Because Plaintiff has failed to articulate in any meaningful or cogent manner why she believes the ALJ erred, the Court is forced to speculate as to the legal bases or grounds for Plaintiff's challenge to the decision of the Commissioner. The Court will, therefore, attempt to speculate - as best as possible - the grounds raised by Plaintiff in support of her request to reverse the decision of the Commissioner.

The first argument that the Court can extrapolate from Plaintiff's brief is a challenge to the decision of the ALJ to reject Plaintiff's subjective pain testimony. Plaintiff asserts that the ALJ improperly rejected Plaintiff's pain testimony "which at a minimum shows she repeatedly has problems with pain which limits her ability to move, grip, and walk, or otherwise function normally."[26] Plaintiff points to her testimony that she has been taking hydrocodone for approximately nine years and that "the inversion of my hips, apparently as a baby, took extensive physical therapy. [I had] the leg braces like Forrest Gump . . . I always have pain in my hands, arms, shoulders, hips, knees." (R. 40-41.)[27]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the

---

[25] To the extent that Plaintiff's use of the phrase "Step 7" was a typographical error and Plaintiff was attempting to raise a challenge at Step One of the sequential analysis it would not help Plaintiff because the ALJ found that Plaintiff was not engaged in substantial gainful activity at Step One. Thus, there would be no need to challenge the ALJ's finding at step one.

[26] Doc. 18 at 18.

[27] The ALJ noted that Plaintiff "did not report side effects" from her medications (R. 23) and Plaintiff does not take issue with this finding.

record must be obvious as to the credibility finding.[28]  While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[29] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[30]  However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[31]  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision,  "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[32] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[33]

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's pain standard "threshold"[34] assessment to Plaintiff's subjective complaints by noting the

---

[28] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[29] Foote at 1562-1563.

[30] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[31] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[32] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[33] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[34] Marbury v. Sullivan, 957 F.2d 837,  839 (11th Cir. 1992). .

Plaintiff's left eye blindness and hip dysplasia.  While the ALJ did not cite the exact language of the standard, he did state that he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Ruling 96-7p."  (R. 16.)  This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. § 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[35]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions, blindness in her left eye and hip dysplasia, that could be expected to give rise to pain.  Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's testimony "is not fully credible concerning the severity of her symptoms and the extent of her limitations" and that "[n]either the severity nor the extent is supported by the objective medical evidence of record."(R. 23.)  In support of this finding, the ALJ pointed out that despite Plaintiff's complaints of arthritis in the hands, on physical examination Dr. Demmi noted that Plaintiff had no swelling or deformity of the fingers or wrists, and Plaintiff's grip strength was 5/5 and fine manipulation of her hands was normal.  While Dr. Demmi noted a popping sensation to the bilateral hips, Plaintiff's motor strength was 5/5.  The ALJ further noted that Plaintiff performed seated

---

[35] See Wilson, 284 F.3d at 1226.

and supine straight leg raises without complaints of hip or back pain and that she had a normal gait. Additionally, the ALJ noted that x-rays of Plaintiff's hips were normal.

The ALJ also partially relied upon the fact that Plaintiff "is able to drive a car without undue difficulty." (R. 23.) Plaintiff argues that this finding is not supported by the evidence. Plaintiff points to her testimony that she only drives for "short distances" such as to her son's school which is only one mile from her home. However, the ALJ did not suggest that Plaintiff could drive great distances; rather, the ALJ's finding is relevant because it shows that Plaintiff is physically capable of driving a vehicle. Moreover, even if the significance of the finding was that Plaintiff could drive a vehicle for extended periods of time (which the ALJ did not state), this was not the only reason articulated by the ALJ for discrediting Plaintiff's subjective complaints of pain. Indeed, as discussed above, the ALJ found that "[n]either the severity nor the extent" of Plaintiff's complaints was supported by the objective medical evidence of record. Accordingly, even without the ALJ's finding regarding Plaintiff's driving, there is substantial evidence to support the ALJ's decision to discredit Plaintiff's subjective complaints.

Plaintiff's second argument appears to be that the ALJ failed to properly consider the vocational evaluation performed by Ms. Gleason. However, other than quoting portions of Ms. Gleason's report, Plaintiff does not explain how the ALJ erred. As such, the Court is again left to guess as to what error the ALJ might have made.

In his Decision, the ALJ discussed Ms. Gleason's evaluation, including her opinion that Plaintiff was not a candidate for vocational rehabilitation at that time. (R. 22.) However, Ms. Gleason's conclusion, which she acknowledged was based at least

14

in part on "observations and self-reported symptoms," was not consistent with the objective medical evidence.  Indeed, as discussed above, Dr. Demmi found that Plaintiff's motor strength was 5/5 in the shoulders and the hips; that there was no swelling or deformity of her fingers, grip strength was 5/5 and fine manipulation of her hands was normal; that her gait was normal and she could walk without assistance; and that her motor, sensory and reflex findings were normal.  (R. 158-62.)  Additionally, x-rays of Plaintiff's right hip, chest and thoracic spine were all normal (R. 197-201) and based on their review of the medical records the non-examining state agency physicians concluded that Plaintiff could perform at least light work.  (R. 163-70, 180-87.)  Accordingly, the ALJ was not required to accord more weight to Ms. Gleason's vocational evaluation.

      Finally, Plaintiff contends that the ALJ failed to properly consider the combined effects of all of Plaintiff's impairments.  It is well-settled that the ALJ must consider the combined effects of Plaintiff's impairments in determining whether she is disabled.[36]  It is the ALJ's duty "to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  Plaintiff alleges disability due to blindness in her left eye, hip dysplasia, and arthritis in her hands and shoulders.  Notably, Plaintiff testified that her left eye vision problem has existed since she was a young child and that she has worked at a number of jobs without vision in her left eye.  (R. 40, 43.)  Accordingly, Plaintiff's left eye blindness was not a pivotal issue in this case.  Nevertheless, the ALJ

---

[36] Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

discussed Plaintiff's blindness in her left eye, as well as the arthritis in her shoulders and hands and her hip dysplasia. Moreover, the ALJ expressly analyzed and then found that Plaintiff did not have "an impairment or combination of impairments" that met or equaled a listed impairment. (R. 22, 24.) As Plaintiff acknowledges in her memorandum, this finding provides sufficient evidence that the ALJ considered the combined effect of Plaintiff's impairments.[37] Accordingly, the Court concludes that the ALJ properly considered the combined effects of Plaintiff's impairments and that there was no error in this regard.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 8, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

---

[37] See Doc. 18 at 18 (quoting Jones v. Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991.))

16